1
2
3
4
5

**UNITED STATES DISTRICT COURT**

6

**DISTRICT OF NEVADA**

7

UNITED STATES OF AMERICA,

8
Plaintiff,

Case No.: 2-12-cv-01014-JAD-GWF

9
vs.

**Order and Judgment [#26]**

10
$150,990.00 in UNITED STATES CURRENCY,

11
Defendants.

12

13       This is a civil forfeiture action over $150,990 in U.S. currency found during an authorized

14   search of Alejandro Diaz-Flores' car while he was stopped for a traffic violation on Interstate 15 in

15   Nevada. The government published notice of the forfeiture action via the official government

16   forfeiture website (www.forfeiture.gov) from July 27, 2012, through August 25, 2012, and directly

17   served Diaz-Flores on August 1, 2012. Docs. 6, 9.  About two years later, on October 3, 2014, the

18   government reached a settlement agreement with Diaz-Flores, the only person to assert a claim over

19   the money. Docs. 21, 26 at ¶18. On October 21, 2014, per the government's motion, the Clerk of

20   Court entered a default against "(1) the $150,990 in United States Currency and (2) all persons or

21   entities who claim an interest in the $150,990 . . . except Alejandro Diaz-Flores." Docs. 21, 25. The

22   government now requests that a default judgment of forfeiture be entered against all persons or

23   entities who claim an interest in this money and that a final judgment of forfeiture be entered against

24   the money and Diaz-Flores. Doc. 26 at ¶28.

25       I find that the *Eitel v. McCool*[1] factors for default judgment are satisfied, and I grant the

26   motion for default judgment.

27

28
_____

[1] *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

1

**Background**

2      On October 8, 2011, Alejandro Diaz-Flores was stopped on Interstate 15 in Nevada for a

3 traffic violation and consented to a search of his car.[2]  The search produced a controlled substance

4 and $150,990.[3]  The money, primarily twenty and ten dollar bills rubber-banded together, was

5 divided into two bags in the car's trunk, where officers also detected the smell of "Pine Sol."[4]

6      Diaz-Flores claimed that the money was his and that he had brought it from Mexico to pay a

7 business supplier in Salt Lake City, Utah.[5]  He said he had earlier flown from Guadalajara, Mexico,

8 to Las Vegas and now intended to drive the rest of the way to Salt Lake City.[6] He admitted to being

9 aware of the legal requirement to declare all currency exceeding $10,000 and that he planned to

10 smuggle the money into the United States to avoid paying taxes.[7]

11      The government filed a verified complaint for forfeiture in rem on June 14, 2012, about a

12 year and a half after the money was discovered.[8] The complaint alleged, among other things, that the

13 money "was used or was intended to be used to facilitate violations of Title II of the Controlled

14 Substance Act" and that it was involved in violating 31 U.S.C. § 5316(a), which requires people to

15 declare currency exceeding $10,000 that they bring into the United States.[9] Both violations trigger

16 the possibility of forfeiture.[10]

17

18

19 ————————————————

20      [2] *Id.*

21      [3] *Id.* at ¶2.

22      [4] *Id.* Illegal couriers often place pungent smells like Pine Sol around the currency they are
transporting to throw off drug-sniffing dogs.

23      [5] *Id.* at ¶2.

24      [6] *Id.*

25      [7] *Id.* at ¶3.

26      [8] Doc. 5.

27      [9] *Id.*

28      [10] *See* 21 U.S.C. § 881(a)(6) and 31 U.S.C. § 5317(c)(2).

2

1    Five days later, an Order for Summons and Warrant of arrest for the money was entered.[11]

2    Both the money and Diaz-Flores were served, and public notice of the forfeiture action was given to

3    all persons and entities by publication via the official government forfeiture website,

4    www.foreiture.gov, from July 27, 2012, through August 25, 2012.[12]

5    On October 3, 2014, the government reached a settlement agreement with Diaz-Flores, who

6    was the only person or entity to assert a claim against the money during the claims period.[13]  In the

7    agreement, Diaz-Flores stipulated that he "knowingly and voluntarily agrees to relinquish all right,

8    title, and interest to the $150,990."[14]  The government moved for entry of a clerk's default on

9    October 7, 2014, after which the Clerk of the Court entered a default against (1) the $150,990 and

10   (2) all persons or entities who claim an interest in the $150,990 except Diaz-Flores. The government

11   now seeks an entry of default judgment.

12                                                  **Discussion**

13   **A. Jurisdiction**

14   The court has jurisdiction over this matter under 28 U.S.C. § 1345 and § 1355(a), which

15   vests district courts with original jurisdiction in "any action or proceeding for the . . . enforcement of

16   any . . . forfeiture . . . incurred under any Act of Congress."[15]

17   **2. Legal Standard**

18   Under Rule 55(b)(2) of the Federal Rules of Civil Procedure, I may enter default judgment if

19   the Clerk has previously entered default based on the defendant's—or in this case,

20   claimant's—failure to defend.  After entry of default, the factual allegations in the complaint are

21   taken as true.[16]  I then have discretion to enter default judgment. *Eitel v. McCool* counsels me to

22   _____

23   [11] Doc. 4.

24   [12] Docs. 6 and 9.

25   [13] Doc. 21.

26   [14] *Id.*

27   [15] 28 U.S.C. § 1355(a).

28   [16] *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

consider: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.[17] An application of these factors justifies the entry of default judgment.

**1. Prejudice**

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default judgment is not entered.  The government posted public notice of this forfeiture action on the United States' official internet forfeiture site from July 27, 2012, through August 25, 2012, and it served Diaz-Flores on August 1, 2012. Diaz-Flores initially asserted a claim over the money but eventually agreed to relinquish his rights in it; and no person or entity has contested the forfeiture. Due to the likelihood that there will be no claimants, the government would be prejudiced by having to expend additional resources litigating an action that appears to be uncontested. This factor favors default judgment.

**2. Merits of the Substantive Claims and the Sufficiency of the Complaint**

The second and third *Eitel* factors favor default judgments where the "complaint sufficiently states a claim for relief under the liberal pleading standards embodied in Rule 8 of the Federal Rules of Civil Procedure."[18] The government alleges that the money was used to, among other things, violate the statutory requirement to declare currency in excess of $10,000 upon entering the United States. According to the complaint—the facts of which can be assumed to be true because there was no response—Diaz-Flores admitted to knowing about this requirement and to smuggling the money in to avoid paying taxes. This is enough to satisfy the "liberal pleading standards embodied in Rule 8."

---

[17] *Eitel*, 782 F.2d at 1471-72.

[18] *United States v. $24,000*, No. 2:09-CV-2319-LRH-RJJ, WL 2695637 at *2 (D. Nev. July 2, 2010) (quotation omitted).

4

1    The government also alleges that the money was used to traffic drugs. Because

2    circumstantial evidence may support forfeiture of the proceeds of a drug crime, the government's

3    complaint need not show a relationship between these proceeds and a specific drug crime.[19]  It is

4    enough to demonstrate that (1) a trained narcotics canine discovered the presence of a controlled

5    substance in the trunk of Diaz-Flores's car; (2) the $150,990 was found, also in the trunk, split

6    between two separate bags in rubber-band-bound stacks of $10 and $20 bills, denominations

7    commonly used in street-level, illicit drug transactions; and (3) officers detected the scent of Pine

8    Sol around the money, which is just the kind of pungent smell drug couriers commonly use to

9    protect their contraband from detection by police dogs. This, too, satisfied the "liberal pleading

10   standards under Rule 8." Therefore, the second and third *Eitel* factors favor default judgment.

11        **3. Sum of Money at Stake**

12        The fourth *Eitel* factor considers the amount of money at stake in relation to the seriousness

13   of the conduct.[20] Here, we have evidence that the money was used or was intended to be used to buy

14   and sell drugs, a serious violation of federal law; and the sum seized falls within the range other

15   courts have found to favor default judgment in similar drug-related cases.[21] This factor favors default

16   judgment.

17        **4. Possibility of Dispute**

18        The fifth *Eitel* factor considers whether there might be a dispute over any material facts. No

19   opposition was filed to the government's motion, and the only other party involved in the set of facts

20   that triggered this forfeiture action, Diaz-Flores, has settled with the government. No dispute over

21   any material facts is likely.  This factor favors default judgment.

22

23

24   _____

25        [19] *United States v. $9,815,* No. 1:13-CV-00145-LJO-SKO, WL 3148435 at *3 (E.D. Cal. June

26   19, 2013).

27        [20] *PepsiCo, Inc* v. *Cal. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002).

28        [21] *See United States v. $129,190*, No. 1:10-CV-1565, WL 1669422 (E.D. Cal. May 11, 2012);
*United States v. $242,484.00*, 389 F.3d 1149 (11th Cir 2004).

**6. Excusable Neglect**

The sixth *Eitel* factor considers whether the default resulted from excusable neglect. The evidence shows that the government gave public notice on its official forfeiture website and also properly served Diaz-Flores, the only person or entity known to have an interest in the money. No hint of excusable neglect is apparent. This factor favors default judgment.

**7. Decision on the Merits**

The final *Eitel* factor supports the principle that "cases should be decided on their merits whenever possible."[22] Yet the "mere existence of [Rule 55(b)] indicates that this preference, standing alone, is not dispositive."[23]  When, as here, there is no answer to a plaintiff's complaint, a decision on the merits is "impractical, if not impossible."[24] Therefore, "the preference to decide cases on the merits does not preclude a court from granting default judgment."[25] This factor favors default judgment.

**C. Procedural Requirements**

In the context of an *in rem* forfeiture action, a court considering default judgment should also consider the procedural requirements set forth by the Civil Asset Forfeiture Reform Act of 2000[26] ("CAFRA") and the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Rules"), because forfeiture can be "harsh and oppressive" and is therefore "not favored by the courts."[27] The concern is that although forfeiture proceedings

---

[22] *Eitel*, 782 F.2d at 1472.

[23] *PepsiCo, Inc.*, 238 F.Supp.2d at 1177 (quotation omitted).

[24] *Id.*

[25] *Kloepping v. Fireman's Fund*, WL 75314 at *3 (N.D. Cal. February 13, 1996).

[26] 18 U.S.C. § 983.

[27] *U.S. v. $191,910*, 16 F.3d 1051, 1069 (9th Cir. 1994), *superseded by statute on other grounds*.

"are nominally 'civil' in nature,'" they are quasi-criminal "in fact if not in form."[28] "Accordingly, the burden on the government to adhere to procedural rules should be heavier than on claimants."[29]

Here, the government has met that burden. In accordance with CAFRA, the Federal Rules of Civil Procedure, and the Supplemental Rules, the government filed a verified complaint for forfeiture *in rem* on June 14, 2012;[30] it obtained a warrant five weeks later;[31] it gave public notice of the forfeiture action for thirty days on the official government forfeiture website and direct notice to Diaz-Flores;[32] and when the deadline had passed for any person or entity to assert a claim on the money, it filed a motion for entry of clerk's default.[33]

The government has therefore met the procedural requirements for *in rem* forfeiture actions. Because it has also presented evidence that, according to the *Eitel* factors, favors default judgment, I grant the government's motion.

**Conclusion**

IT IS HEREBY ORDERED that the government's Motion for Default Judgment of Forfeiture and Final Judgment of Forfeiture **[#26]** is **GRANTED**.

IT IS FURTHERED ORDERED that judgment is entered in favor of the United States of America against all persons or entities who claim an interest in the $150,990 in United States Currency in this action.

IT IS FURTHERED ORDERED that final judgment of forfeiture is entered against the $150,990 in United States Currency and Alejandro Diaz-Flores; the $150,990 in United States Currency shall be forfeited to the United States of America; and no right, title, or interest in the property shall exist in any other party.

---

[28] *Id.* at 1063.

[29] *Id.* at 1069.

[30] Doc. 1.

[31] Doc. 26 at ¶ 6, 7.

[32] Doc. 9.

[33] Doc. 23.

IT IS FURTHER ORDERED that, pursuant to the settlement agreement between the United States and Alejandro Diaz-Flores, once the property is forfeited, and within a reasonable amount of time, the United States shall release to Alejandro Diaz-Flores, through Joshua Tomsheck, Esq., one payment of $37,747, less any debt owed the United States, any agency of the United States, or any debt in which the United States is a party.

Dated: November 10, 2014.

_____
Jennifer A. Dorsey
United States District Judge